UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| RUBEN AUSTIN,<br>    Plaintiff | :<br>:<br>:    C.A. No.: |
| v. | : |
| SOUTHSTREAM SEAFOODS, INC.,<br>    Defendant | :<br>:<br>: |

## COMPLAINT

### I. Introduction

This action is brought by the Plaintiff seeking declaratory and injunctive relief, attorney's fees and litigation expenses and other equitable relief, including back pay, as well as compensatory and punitive damages to remedy unlawful discrimination in employment the Plaintiff suffered in violation of the Rhode Island Fair Employment Practices Act ("FEPA"), R.I.G.L §28-5-1, *et seq.*, the Rhode Island Civil Rights Act of 1990 ("RICRA"), R.I.G.L. §42-112-1, *et seq.*, and the Rhode Island Whistleblowers' Protection Act ("RIWPA"), R.I.G.L. §28-50-1, *et seq.*

### II. Parties

1. The Plaintiff is a resident of the City of Miami, County of Dade, State of Florida.

2. Defendant Southstream Seafoods, Inc. ("Southstream") is a Rhode Island corporation, with its principal place of business located in the City of Warwick, County of Kent, State of Rhode Island.

### III. Jurisdiction

3. This Court has jurisdiction over the Plaintiff's claims through diversity jurisdiction pursuant to 28 U.S.C.A. §1332(a) insofar as the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and there is diversity of citizenship between the Plaintiff and the Defendant.

## IV. Venue

4. Venue is proper in this Court insofar as a substantial portion of the events or omissions giving rise to the within claim occurred in Rhode Island in compliance with the requirements set forth in 28 U.S.C. §1391.

## V. Exhaustion of Administrative Remedies

5. On or about September 12, 2019, the Plaintiff timely filed a charge of discrimination against Defendant Southstream with the Rhode Island Commission for Human Rights ("RICHR"), RICHR No. 20 EAO 055-50/07.

6. On or about March 10, 2020, more than one hundred twenty (120) days, but less than two (2) years after the charge was co-filed, the Plaintiff requested that the RICHR issue right to sue letters.

7. On or about March 17, 2020, the Plaintiff was issued a notice of right to sue by the RICHR and has timely instituted suit thereon.

8. The RICHR failed to act upon the Plaintiff's charge of discrimination within sixty (60) days of the filing of the charge and thus the Plaintiff's CRPD claim is properly before this Court pursuant to R.I.G.L. §42-87-4(b).

9. There is no requirement under the RICRA relative to the exhaustion of administrative remedies.

## VI. Material Facts

10. On or about March 1, 2017, the Plaintiff was hired by Defendant Southstream as an Account Executive.

11. The Plaintiff is of German descent.

12. During all relevant time periods, the Plaintiff's work performance was satisfactory and met Defendant Southstream's legitimate expectations as evidenced by the fact that he was the salesman with the highest number of calls made daily, weekly and monthly and won several competitions for same.

13. Shortly after his hire, the Plaintiff was subjected to discriminatory conduct by his co-workers.

14. For instance, Mark Soderstrom ("Soderstrom"), Defendant Southstream's owner and President, and Michael Kulsewski ("Kulsewski"), Defendant Southstream's Operations Manager and the Plaintiff's direct supervisor, made several inappropriate comments regarding the Plaintiff's German background and appearance.

15. For example, Mr. Soderstrom made several Nazi jokes such as "let's go out and shoot people."

16. In addition, Mr. Kulsewski frequently mocked the Plaintiff's German accent and made several inappropriate comments about his clothing, such as his "European" appearance and "tight-fitting" pants.

17. On one (1) occasion, Mr. Kulsewski compared me to a woman.

18. On another occasion, Mr. Kulsewski stated, in the presence of several other Defendant Southstream employees, that it appeared that I had "cleavage."

19. On or about August 29, 2018, I made a purchase inquiry with Mr. Kulsewski regarding a pending sale that Mr. Soderstrom sought information about. Mr. Kulsewski ignored my inquiry. As a result, I continued to seek information regarding the pending sale.

20. In response to my persistent inquiries, Mr. Kulsewski threatened the Plaintiff in the presence of several other Defendant Southstream employees, including Mr. Soderstrom, by screaming, "You better watch your f*cking mouth" and "Watch out."

21. Although Mr. Soderstrom was present during Mr. Kulsewski's outburst, Mr. Soderstrom ignored Mr. Kulsewski's threats and stood silently at his desk.

22. Following the aforementioned incident, the Plaintiff complained to Mr. Soderstrom about Mr. Kulsewski's discriminatory conduct.

23. Mr. Soderstrom failed and/or refused to investigate Mr. Kulsewski's discriminatory conduct directed towards the Plaintiff.

24. On or about September 14, 2018, the Plaintiff asked Mr. Kulsewski about a Defendant Southstream report. In response to the Plaintiff's inquiry and in the presence of several Defendant Southstream employees, Mr. Kulsewski aggressively charged the Plaintiff and called him "dumb" and "stupid."

25. During the aforementioned interaction, the Plaintiff was fearful that Mr. Kulsewski was going to strike him.

26. In response to Mr. Kulsewski's violent behavior towards the Plaintiff, Daniel Dickeson ("Dickeson"), Respondent Southstream's Chief Financial Officer, intervened and asked Mr. Kulsewski to stop. As a result, Mr. Kulsewski walked away.

27. Due to Mr. Kulsewski's violent outburst, the Plaintiff left the office out of fear for his safety.

28. Shortly thereafter, the Plaintiff sent an e-mail to Mr. Soderstrom and Mr. Dickeson regarding Mr. Kulsewski's threatening conduct and concerns about his safety at work.

29. In response to the Plaintiff's e-mail, Mr. Dickeson asked the Plaintiff why he was out of the office.

30. Shortly thereafter, the Plaintiff returned to Defendant Southstream's office.

31. After returning to work, the Plaintiff met with Mr. Dickeson. During this meeting, the Plaintiff told Mr. Dickeson that Mr. Kulsewski verbally abused and harassed him, and as a result, the Plaintiff feared for his safety while at work.

32. In response, Mr. Dickeson showed little empathy and informed the Plaintiff that Mr. Kulsewski would not be fired and that the Plaintiff had to continue reporting to him.

33. Shortly thereafter, Mr. Dickeson sent the Plaintiff an e-mail stating that he was being moved from non-paid-time-off status to paid-time-off status and that his hours would be fully monitored.

34. All other sales employees at Defendant Southstream were entitled to several weeks of vacation and allowed to come and go from the office each day without issue.

35. On or about September 20, 2018, the Plaintiff began an approved vacation.

36. On or about September 20, 2018, Mr. Soderstrom accused the Plaintiff of not making a sufficient amount of company calls on September 19, 2018.

37. In response to Mr. Soderstrom's accusation, the Plaintiff told Mr. Soderstrom that he made several client calls from his cell phone and that he performed other work-related duties to prepare for his pre-approved vacation.

38. Prior to the Plaintiff's complaints about Mr. Kulsewski's unlawful conduct, Mr. Soderstrom never complained about the Plaintiff's call numbers. Rather, Mr. Soderstrom praised the Plaintiff for his call numbers.

39. On or about October 1, 2018, the Plaintiff returned from his pre-approved vacation. However, due to a flight delay, the Plaintiff reported to work late.

40. After returning to work, the Plaintiff was formally reprimanded for missing work. In fact, the Plaintiff was told that if he missed any additional time from work, his job would be in jeopardy.

41. In October, 2018, the Plaintiff had his company vehicle inspected by Infiniti due to the impending termination of the lease period.

42. The aforementioned inspection revealed $778.00 of damage to the vehicle.

43. In response to the report of damages, Mr. Soderstrom told the Plaintiff that he was solely responsible for the cost of the damages and demanded immediate payment.

44. However, the Plaintiff was the third sales person at Defendant Southstream to utilize this vehicle. In addition, Defendant Southstream failed to complete a hand-over inspection prior to the Plaintiff taking possession of the vehicle.

45. On or about October 16, 2018, the Plaintiff e-mailed Mr. Soderstrom and Mr. Dickeson. In this e-mail, the Plaintiff complained that it was unfair for him to bear the financial responsibility for the vehicle damage.

46. In response, Mr. Dickeson informed the Plaintiff that he needed to return his company vehicle and keys to Defendant Southstream the following morning.

47. On or about October 17, 2018, the Plaintiff sent an e-mail to Mr. Soderstrom stating that he believed Defendant Southstream's demand for an immediate return of the company vehicle and keys was invalid and unlawful.

48. In response, Mr. Dickeson requested a meeting with the Plaintiff.

49. Shortly thereafter, the Plaintiff met with Mr. Dickeson. During this meeting, Mr. Dickeson terminated the Plaintiff's employment purportedly because he was not a "good fit" at Defendant Southstream and his work performance was poor.

## VI. Claims for Relief

50. The Plaintiff incorporates in the counts below the allegations contained in paragraphs 1-49 above.

### Count One
### Unlawful Discrimination—R.I.G.L. §28-5-1, *et seq.*

51. Defendant Southstream, by its individual and/or concerted acts and/or omissions, including, but not limited to, those described herein, constitute unlawful discrimination against the Plaintiff in employment on account of his national origin in violation of the Rhode Island Fair Employment Practices Act, R.I.G.L. §28-5-1, *et seq.*, causing the Plaintiff to suffer damages as aforesaid and thereby deprived the Plaintiff of rights secured under the FEPA.

### Count Two
### Unlawful Discrimination—R.I.G.L. §42-112-1, *et seq.*

52. Defendant Southstream, by its individual and/or concerted acts and/or omissions, including, but not limited to, those described herein, constitute unlawful discrimination against the Plaintiff in employment on account of his national origin insofar as said actions and/or omissions resulted in the loss of a promotion in violation of the Rhode Island Civil Rights Act of 1990, R.I.G.L. §42-112-1, *et seq.*, causing the Plaintiff to suffer damages as aforesaid, and thereby deprived the Plaintiff of rights secured under the RICRA.

### Count Three
### Unlawful Discrimination—R.I.G.L. §28-50-1, *et seq.*

53. Defendant Southstream, by its acts and/or omissions, including but not limited to, those described herein, violated the RIWPA insofar as the Defendant discriminated against the

Plaintiff because he reported to his supervisors a violation of federal, state or local law, causing the Plaintiff to suffer damages as aforesaid, and thereby deprived the Plaintiff of rights secured under the RIWPA.

### VIII.   Prayers for Relief

**WHEREFORE**, the Plaintiff respectfully prays that this Court grant the following relief:

1. a declaratory judgment that Defendant Southstream, in the manner described herein, unlawfully discriminated against the Plaintiff in violation of the Rhode Island Fair Employment Practices Act, R.I.G.L §28-5-1, *et seq.*, the Rhode Island Civil Rights Act of 1990, R.I.G.L. §42-112-1, *et seq.*, and the Rhode Island Whistleblowers' Protection Act, R.I.G.L. §28-50-1, *et seq.*;

2. enjoining and permanently restraining Defendant Southstream from violating the Rhode Island Fair Employment Practices Act, R.I.G.L §28-5-1, *et seq.*, the Rhode Island Civil Rights Act of 1990, R.I.G.L. §42-112-1, *et seq.*, and the Rhode Island Whistleblowers' Protection Act, R.I.G.L. §28-50-1, *et seq.*;

3. award the Plaintiff back pay, including incremental increases, pension benefits, health and dental benefits and other benefits, plus prejudgment interest thereon;

4. award the Plaintiff compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, plus prejudgment interest thereon;

5. award the Plaintiff punitive damages;

6. award the Plaintiff reasonable attorney's fees and costs of litigation; and,

7. such other and further relief as the Court deems just and proper.

## IX. Demand for Jury Trial

The Plaintiff hereby demands a trial by jury on all counts so triable.

## X. Designation of Trial Counsel

The Plaintiff hereby designates V. Edward Formisano, Esquire and Michael D. Pushee, Esquire as trial counsel.

PLAINTIFF,
By his attorneys,
**FORMISANO & COMPANY, P.C.**

Dated: June 9, 2020

/s/ V. Edward Formisano
V. Edward Formisano (#5512)

/s/ Michael D. Pushee
Michael D. Pushee (#6948)
100 Midway Place, Suite 1
Cranston, RI 02920-5707
(401) 944-9691
(401) 944-9695 (facsimile)
edf@formisanoandcompany.com
mpushee@formisanoandcompany.com

## CERTIFICATION

I hereby certify that on the 9th day of June, 2020, I caused the within to be electronically filed with the Clerk of the U.S. District Court for the District of Rhode Island using the CM/ECF System.

/s/ V. Edward Formisano